**STATE of Missouri, Respondent,**

**v.**

**Norman E. DOUGLAS, Appellant.**

**Norman E. DOUGLAS, Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**Nos. WD 41558, WD 42522.**

Missouri Court of Appeals, Western District.

Aug. 14, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 2, 1990.

Application to Transfer Denied Nov. 20, 1990.

Elizabeth Clarke, Carmel, Ind., for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and SHANGLER and GAITAN, JJ.

KENNEDY, Judge.

Defendant Norman Douglas appeals from convictions upon jury trial of one count of first degree sexual assault, § 566.040, RSMo 1986; two counts of rape, § 566.030, RSMo 1986; one count of sodomy, § 566.060, RSMo 1986; and two counts of child abuse, § 568.060, RSMo 1986. The sexual offenses were committed against his stepdaughter and daughter and the instances of child abuse were against his stepdaughter, his daughter and his son. He was sentenced as a persistent offender to consecutive prison terms of 25 years on each of three counts and 10 years on each of the other three counts.

One of the 10–year sentences was for first degree sexual assault in having sexual intercourse with 15–year–old stepdaughter Tracy. For error in the disallowance of cross-examination of Tracy with respect to her sexual activity after the alleged incident for which defendant was convicted, we reverse the conviction on Count 5 and remand for a new trial on that count.

On the other counts the convictions are affirmed.

■ Defendant also appeals from the trial court's denial of his Rule 29.15 motion for post-conviction relief. No brief has been filed specifying any error. Thus, the appeal is deemed abandoned and the denial of his Rule 29.15 motion is affirmed. *SAB Harmon Industries, Inc. v. All State Building Systems, Inc.,* 733 S.W.2d 476, 479 n. 1 (Mo.App.1987); *Wisdom v. Wisdom,* 689 S.W.2d 82, 85 (Mo.App.1985); *see Thummel v. King,* 570 S.W.2d 679, 684–88 (Mo. banc 1978).

The sufficiency of the evidence to support the convictions is not challenged, and we need state the evidence only briefly.

Defendant and his wife lived at Hallsville, Missouri, with eight children. Tracy was the child of the wife and stepchild of the defendant while Velveeta and Raymond were the children of the wife and the defendant. Tracy was the oldest of the children. She was 15 years old in July or August 1987, the time of the first degree sexual assault with which defendant was charged and convicted. She testified to repeated earlier uncharged acts of intercourse, beginning when she was 8 years old.

Velveeta was 12 in April 1988, the time of the sodomy of which defendant was convicted. Defendant on that occasion put his finger into her vagina. Velveeta testified he had done this often before. She testified also that he had sexual intercourse with her when she was 12 years old in the summer of 1987 and again in March or April 1988, the two rapes with which defendant was charged and convicted. She testified also to repeated earlier uncharged acts of intercourse beginning when she was 11 years old, following cunnilingus performed upon her by defendant.

The child abuse convictions were based upon testimony of defendant's excessive, injury-inflicting punishments administered to Tracy and Velveeta, and to a younger son, Raymond.

■ Defendant advances two claims of error. One such claim is that the court erred in allowing evidence of defendant's uncharged sexual crimes against Tracy and Velveeta. The allowance of the complained-of evidence to show defendant's motive was within the trial court's discretion. "Prior sexual intercourse or intimacy between defendant and victim indicates a sexual desire for the victim by the defendant and tends to establish a motive for statutory rape, i.e. satisfaction of defendant's sexual desire for the victim." *State v. Graham,* 641 S.W.2d 102, 105 (Mo. banc 1982). *Graham* involved the statutory rape by the defendant of his 11–year–old stepdaughter. Numerous cases have considered and have rejected defendant's argument. *See State v. Taylor,* 735 S.W.2d 412, 415–18 (Mo.App.1987); *State v. V_____ C_____,* 734 S.W.2d 837, 842–45 (Mo.App.1987); *State v. Sandlin,* 703 S.W.2d 48, 49 (Mo.App.1985); *State v. Smith,* 694 S.W.2d 901, 902 (Mo.App.1985); *State v. Koster,* 684 S.W.2d 488, 490 (Mo. App.1984).

Defendant's second claim of error is that the court erred in refusing on the basis of the rape shield statute, § 491.015, RSMo 1986,[1] to allow him to cross-examine Tracy with respect to her other sexual activity than the alleged intercourse of which defendant was charged. This allegation of error must be sustained.

Defendant was convicted of first degree sexual assault upon Tracy. Tracy testified defendant had sexual intercourse with her in the summer of 1987, when she was 15 years old.

The state presented the testimony of Dr. Maria Teresa Esquivel, a pediatrician, who had examined Tracy on May 9, 1988, upon reference by the Division of Family Services. Dr. Esquivel's examination of Tracy's genitalia disclosed the absence of hymenal tissue. This, according to Dr. Esquivel, "would [not] be a usual finding on an individual who had not engaged in sexual intercourse." She was then asked if her observations of Tracy were "consistent with penile penetration of the vagina." Dr. Esquivel answered in the affirmative.

Defendant's counsel then, after Tracy's direct examination was completed, asked the court's permission to cross-examine her with respect to other sexual activity during the time intervening between defendant's alleged intercourse with her—in the summer of 1987—and Dr. Esquivel's examination on May 9, 1988, when the absence of the hymen was noted. Defendant's counsel quoted from Dr. Esquivel's report, which stated: "Tracy says in the last few months she was sexually active with her boyfriend." The State objected to the proposed cross-examination on the basis of the rape shield statute, and the court sustained the objection.

In the absence of the rape shield statute, it is scarcely debatable that the proposed cross-examination of Tracy about her sexual activity with her boyfriend after the time of the sexual assault with which defendant was charged and before Dr. Esquivel's examination would have been admissible and its exclusion error. Dr. Esquivel's testimony of the absence of Tracy's hymen when she examined her in May 1988 was offered by the State for no other purpose than to support Tracy's testimony that the defendant had had intercourse with her in July or August 1987. The intended inference was that the absence of the hymen was attributable to defendant's alleged intercourse with her. The defendant was put to an unfair disadvantage when he was not allowed to counter the inference by showing that other sexual activity could have accounted for the absence of the hymen. *Biener v. St. Louis Public Service Co.*, 160 S.W.2d 780, 785 (Mo.App.1942); Mo. Evidence Restated, sec. 103(e) (Mo.Bar 1984); 1A Wigmore, Evidence § 133 (Tillers rev. 1983); *see also Hollocher v. Taylor*, 506 S.W.2d 105, 106 (Mo.App.1974).

If the State had not put on the testimony of Dr. Esquivel—which, as we have noted above, was presented for no other purpose than to support Tracy's accusation of inter-

---

1. Sec. 491.015, RSMo 1986, reads as follows:
   1. In prosecutions under chapter 566, RSMo, or prosecutions related to sexual conduct under chapter 568, RSMo, opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:
   (1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime; or
   (2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;
   (3) Evidence of immediate surrounding circumstances of the alleged crime; or
   (4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.
   2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.
   3. [Omitted].
   The "prior sexual conduct" referred to in § 491.015, RSMo 1986, we assume to mean sexual conduct prior to trial, rather than prior to the alleged crime.

course—then undoubtedly the statute would have required the exclusion of the proposed cross-examination. The cross-examination would for that matter have been excludable by common law principles as being irrelevant to any issue in the case and having no tendency to impeach Tracy. *State v. Lee,* 404 S.W.2d 740, 749 (Mo. 1966); *State v. Kain,* 330 S.W.2d 842, 845–46 (Mo.1960); *State v. Taylor,* 320 Mo. 417, 8 S.W.2d 29, 34 (1928).

Does § 491.015, RSMo 1986, require the exclusion of this evidence? The State, citing *State v. Jones,* 716 S.W.2d 799, 800 (Mo. banc 1986), says it does, that *Jones* makes the statute's prohibition absolute, with the exceptions expressly delineated in subsections (1), (2), (3) and (4) of paragraph 1 thereof. We do not think *Jones* is to be read so narrowly. The holding of that case was that the trial court's exclusion of evidence of a rape victim's consensual sex with defendant three and one-half to four and one-half months before the date of the alleged forcible rape of the victim was not error, as against defendant's claim that the evidence was relevant to his defense of consent. The court concluded that defendant was not deprived of a fair trial by the exclusion of the evidence, and that the trial court in the circumstances had not abused its discretion in excluding the same. The clear implication is that if the exclusion of the evidence had been deemed to have deprived defendant of a fair trial the conviction would have been reversed and the case remanded for a new trial.

To give paragraph 1 of the rape shield statute the absolute effect argued for by the State would be to make an unconstitutional application thereof, an eventuality mentioned in *State v. Ray,* 637 S.W.2d 708, 709 n. 1 (Mo. banc 1982).[2] The statute may not be applied to deny defendant his constitutional rights. In *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347

(1974), the Supreme Court held that an Alaska statute making juvenile court records confidential could not be applied to prevent cross-examination of a crucial prosecution witness about his juvenile court record to show the witness's bias and his possible reasons for testifying untruthfully. To allow the confidentiality statute to put off limits a salient inquiry of the witness, the Supreme Court held, would violate the Confrontation Clause of the Sixth Amendment and the Fourteenth Amendment.

In *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), a homicide defendant had been prevented by the application of the hearsay rule and the rule that a party vouches for the truthfulness of the testimony of his own witness, from showing that another had repeatedly confessed to the crime with which the defendant was charged. The Supreme Court held that the Mississippi trial court's narrow and mechanistic application of the voucher and hearsay rules had deprived defendant of the fair trial contemplated by due process.

The teaching of *Davis* and *Chambers* is that a rule of evidence, whether it has its origin in statute, as in *Davis* and in the present case, or in common law, as in *Chambers,* may not be narrowly or mechanistically applied to deprive a defendant of rights to confront and cross-examine witnesses and to call witnesses in his own defense, both rights essential to due process and guaranteed by the Fourteenth Amendment.

To make particular application of the *Davis* and *Chambers* teaching to the present case, the rape shield statute may not be applied so strictly as to deprive the defendant of the fair trial comprehended by the concept of due process. To allow the State to show that Tracy's hymen was absent, with the clear and calculated impli-

---

**2.** Sec. 491.015 has been held facially constitutional. *State v. Ray,* 637 S.W.2d at 709 n. 1; *State v. Brown,* 636 S.W.2d 929, 934–35 (Mo. banc 1982). For a discussion of unconstitutional application of a facially constitutional statute, *see In re Marriage of Siller,* 187 Cal.App.3d 36, 231 Cal.Rptr. 757, 764–65 (1986). *See also,* *Foundation for the Handicapped v. Department of Social and Health Services of Washington State,* 97 Wash.2d 691, 648 P.2d 884, 887 (1982); *Felder v. Harnett County Bd. of Educ.,* 349 F.2d 366, 367–68 (4th Cir.1965); 1 J. Sutherland, Statutory Construction § 2.06 (4th ed. 1985 rev.).

cation that its absence was caused by intercourse with the defendant, then to forbid defendant to show that Tracy had had intercourse with another, was violative of defendant's right to a fair trial.[3]

Defendant's conviction of first degree sexual assault on Count 5 is reversed and that count is remanded for a new trial. The convictions on all other counts are affirmed. The court's denial of defendant's Rule 29.15 motion is affirmed.

All concur.

**3.** The following language from the Supreme Court's opinion in *Davis v. Alaska,* 415 U.S. at 320, 94 S.Ct. at 1112, is apt:

The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. The State could have protected Green from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records.