STATE of Missouri, Respondent,

v.

Steve Sharp SHERMAN, Appellant.

No. 63847.

Supreme Court of Missouri,
En Banc.

Aug. 31, 1982.

Stephen W. Mendell, Asst. Public Defender, St. Joseph, for appellant.

John Ashcroft, Atty. Gen., Darrell Panethiere, Asst. Atty. Gen., Kansas City, Ted Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Judge.

Appellant was convicted of attempted rape and sentenced to a term of one year in the county jail. Sec. 564.011, RSMo 1978. The appeal therefrom revolves around the application and alleged unconstitutionality of § 491.015, RSMo 1978, commonly referred to as the "rape shield" statute. We reverse and remand.

At trial, appellant's defense was alibi: that he had been at home with his mother and sisters watching t.v. when the crime allegedly occurred. In an offer of proof, appellant sought to cross-examine the prosecutrix (hereinafter referred to as the complainant) and to introduce extrinsic evidence in order to establish that she had told a Karl Maddox approximately three hours before the alleged attempted rape that someone with the initials R.G. had "just raped" her. The trial court excluded the evidence. Two issues are raised on appeal: (1) the admissibility of the evidence under the statute, and (2) the constitutionality of the statute. Because we decide that the evidence was admissible under the statute, we need not reach the second issue.[1] Sec. 491.015, RSMo 1978, reads as follows:

1. In prosecutions for the crimes of rape, attempt to commit rape, or conspir-

---

1. Additionally, we recently declared the statute to be facially constitutional in *State v. Brown*, 636 S.W.2d 929 (Mo. banc 1982), but there al- ways remains the possibility of an unconstitutional application thereof.

acy to commit rape, opinion and reputation evidence of the complaining witness' prior sexual conduct is inadmissible; evidence of specific instances of the complaining witness' prior sexual conduct or the absence of such instances or conduct is inadmissible, except where such specific instances are:

(1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent and the evidence is reasonably contemporaneous with the date of the alleged crime; or

(2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;

(3) Evidence of immediate surrounding circumstances of the alleged crime; or

(4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

2. Evidence of the sexual conduct of the complaining witness offered under this section is admissible to the extent that the court finds the evidence relevant to a material fact or issue.

3. If the defendant proposes to offer evidence of the sexual conduct of the complaining witness under this section, he shall file with the court a written motion accompanied by an offer of proof or make an offer of proof on the record outside the hearing of the jury. The court shall hold an in camera hearing to determine the sufficiency of the offer of proof and may at that hearing hear evidence if the court deems it necessary to determine the sufficiency of the offer of proof. If the court finds any of the evidence offered admissible under this section the court shall make an order stating the scope of the evidence which may be introduced. Objections to any decision of the court under this section may be made by either the prosecution or the defend-

ant in the manner provided by law. The in camera hearing shall be recorded and the court shall set forth its reasons for its ruling. The record of the in camera hearing shall be sealed for delivery to the parties and to the appellate court in the event of an appeal or other post trial proceeding.

■ We have ruled that the statute creates only a "presumption" that evidence of a victim's prior sexual conduct is irrelevant. *State v. Brown,* 636 S.W.2d 929, 933 (Mo. banc 1982). The statute enumerates four exceptions to the general presumption; and, additionally, it permits the trial court to admit evidence that it finds is relevant to a material fact or issue. Upon examination of the whole record, we find that appellant's proffered evidence fell within one of the enumerated exceptions: namely, it was "[e]vidence of immediate surrounding circumstances of the alleged crime." § 491.-015.1(3). Obviously, the exception has much in common with the theory of *res gestae.*

■ Generally, acts, statements, occurrences and the circumstances forming part of the main transaction may be shown in evidence under the *res gestae* rule where they precede the offense immediately or by a short interval of time and tend, as background information, to elucidate a main fact in issue. *Bruce v. United States,* 73 F.2d 972, 974 (8th Cir. 1935); *State v. Hampton,* 580 S.W.2d 552, 553 (Mo. App. 1979). The express *"res gestae"* includes "[t]hings done, or . . . the facts of the transaction; . . . the surrounding facts of a transaction explanatory of an act or showing a motive for acting; . . . matters incidental to a main fact and explanatory of it, including acts and words which are so closely connected with a main fact as will constitute a part of it, and without a knowledge of which the main fact might not be properly understood." *State v. Jones,* 256 S.W. 787, 791 (Mo. 1923).

■ In the case at bar, Karl Maddox stated on voir dire that the person whose initials were "R.G." was one Ronnie Gentry. On direct examination, the complainant, a fourteen year old girl, testified that at around 5:00 p.m. on the evening in question, she had taken her niece to a 7–11 store in St. Joseph to buy candy and that on the way back she had seen and talked to Ronnie Gentry until it started raining. She described him as about 5′5″ and quite thin. The complainant testified that she then took her niece home and went visiting at Jerry Geiler's house, after which she went home and ate supper. She was at the Geiler residence from approximately 6:00 to 7:00 p.m. Here it was that she allegedly told Karl Maddox that "R.G." had "just raped" her. After supper, the complainant went to a Marty Russell's at 26th and Mary. On the way, according to her testimony, she ran into Ronnie Gentry again and talked with him as he walked her up the alley to the Russell residence, where she remained, playing cards and watching t.v., until approximately 8:30 p.m. The complainant testified that she returned home, going up Mary Street and then down the alley behind her own home at 2717 Patee. It was then and in this alley that appellant allegedly attempted to rape her. One more bit of evidence ties Ronnie Gentry to the total transaction and places him at the *locus in quo* near the time of the alleged offense: Vickie Geiler stated that on her return from the 7–11 store around 8:50 p.m., she saw the complainant in the alley between Patee and Mary streets. She saw the complainant with someone she was certain was not appellant and who she thought was Ronnie Gentry. She was certain that "whoever" it was was small.

Upon consideration of the whole record, we observe that the figure of Ronnie Gentry was dominant in the itinerary of the complainant on the evening in question. Her comings and goings are frequent, and upon each excursion, and whether in alley or street, Ronnie Gentry seems to appear. Indeed, he is present either in conversation or in fact each time the complainant leaves home and may have been with the complainant in an alley at the time of the alleged offense. Finally, we observe that at the trial Ronnie Gentry is mentioned in connection with the evening's activities by three different witnesses, including the complainant.

The trial court refused to permit cross-examination of the complainant or the introduction of Karl Maddox's testimony, finding that it was incredible and was not completely consistent with any theory that appellant could offer as to why the complainant would say one person raped her and then another person only attempted to rape her, and why she would press charges against one and not the other.

■ The jury is the *sole* judge of the credibility of witnesses and the weight to be given their testimony. *State v. Hill,* 434 S.W.2d 529, 531 (Mo. 1968). To the extent that the trial court based its ruling upon a determination of the witness's credibility, it erred. Moreover, that the proffered evidence left a picture of confused motives on the complainant's part is a problem for the prosecution to explain, not for the criminal defendant. The state must take the facts as it finds them, just as a defendant must. We find that the proffered evidence was part of the immediate circumstances and admissible under the statute.

Accordingly, we reverse and remand.

All concur.